UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | Criminal No. 6:16-cr-00054-S-GFVT-HAI |
| Plaintiff, ) | |
| ) | |
| V. ) | **MEMORANDUM OPINION** |
| ) | **&** |
| DUSTIN HIGGINBOTHAM, ) | **ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Law enforcement executed a search warrant at a London, Kentucky, residence where Dustin Higginbotham was on house arrest and obtained, among other things, a seven to eight ounce rock of methamphetamine and $128,953.00.  Higginbotham was subsequently charged with conspiracy and possession with the intent to distribute methamphetamine.  Higginbotham now moves to suppress the evidence collected pursuant to the search warrant on staleness grounds.  For the reasons set forth below, the Court **ADOPTS IN PART** but **DENIES IN PART** the Magistrate Judge's Recommended Disposition, and **DENIES** the Defendant's motion to suppress in light of the *Leon* good faith exception.

**I**

On the evening of May 21, 2016, Chief Wayne Bird of the Williamsburg Police Department was contacted by confidential informant Roy West, who had assisted Bird on multiple methamphetamine trafficking cases during the preceding two months.  [R. 18 at 2.] West indicated to Bird that he had been at the residence of Dustin Higginbotham and had seen Higginbotham in possession of an approximately eight-ounce rock of methamphetamine.  [*Id.* at

2-3.] After obtaining this information from West, Chief Bird met with Detective James Sizemore at the Laurel County Sheriff's Office, and the two men contacted Roy West via speakerphone. West again explained he had seen an approximately eight-ounce rock of methamphetamine at Dustin Higginbotham's residence. West described the location of the residence as well as the area within the residence where he had seen the contraband. [*Id.*] Shortly thereafter, Detective Sizemore learned from others at the Laurel County Sheriff's Office that Higginbotham was on home incarceration at the residence and had prior criminal convictions for drug trafficking. [*Id.* at 3.]

The same evening all of this occurred, Detective Sizemore drafted the search warrant affidavit at issue in this action. [*Id.* at 4.] He then had the affidavit signed by Laurel Circuit Court Judge Steve Jones at 1:19 a.m. on May 22, 2016. [*Id.* at 5.] The relevant portions of the affidavit read:

> The affiant, Det. James M. Sizemore, a peace officer of Laur[el] County Sheriff Department being duly sworn, states that he has and there is reasonable and probable grounds to believe and affiant does believe that there is now on the premises known and numbered as 204 Chippewa Lane London Ky 40741[,] The residence where Dustin Higginbotham is currently on House Arrest[,] AppoxGPS Coordinates are: 37.139531 -84.096248[,] and more particularly described as follows:
>
> . . .
>
> Affiant has been an officer in the aforementioned agency for a period of 9 years and the information and observations contained herein were received and made in his capacity as an officer thereof.
>
> On the 21 day of May, 2016, at approximately 11:00 a.m./p.m.,[1] affiant received information from/observed: Received information from Chief Wayne Bird of Williamsburg Police Department that [an] informant told him that he was at Dustin Higginbotham residence. And Dustin Higginbotham had in his possession a rock of Crystal Methamphetamine that weighed 7 to 8 ounces in a tupperware bowl.

---

[1] Detective Sizemore did not circle either "a.m." or "p.m."

> Acting on the information received, the affiant conducted the following independent investigation: Chief Wayne Bird's informant Roy West has worked for Chief Bird for about 2 months. And has assisted in 3 Trafficking cases for Crystal Methamphetamine. Dustin Higginbotham is on house arrest and has previous Trafficking in Controlled Substance charges[.]
>
> Affiant has reasonable and probable cause to believe that grounds exist for the issuance of a Search Warrant, based on the aforementioned facts, information and circumstances and prays that a Search Warrant be issued, that the property be seized, or any part thereof, and brought before any court and/or retained subject to order of said court.

[*See* R. 18-1.]

Law enforcement officers executed the search warrant just over an hour after it was signed. During the search, they located one pound of methamphetamine in a plastic container, approximately $128,953.00 in a different container, pills, and a gun case with a magazine and ammunition. [*Id.* at 6.] Higginbotham was subsequently arrested on state drug trafficking charges, and on December 15, 2016, a grand jury returned a federal indictment charging Higginbotham with the knowing and intentional possession of methamphetamine with the intent to distribute. [R. 1.] The grand jury later returned a superseding indictment that added a conspiracy charge. [R. 24.]

Although informant Roy West stated he personally observed the rock of methamphetamine in Higginbotham's residence, a report prepared by a Drug Enforcement Agency Task Force Officer several months later calls West's credibility into question. [*See* R. 18 at 6-7.] During an August 2016 interview memorialized in a DEA-6 report, West indicated he dropped a certain woman off near Higginbotham's residence and picked her up an hour later, when she told him that Higginbotham had seven to eight ounces of methamphetamine and significant amounts of money in the residence. [*Id.*] During this August interview, West

3

admitted he never personally entered Higginbotham's residence.  Instead, he simply claimed to have relayed to Chief Bird the information he obtained from the woman.  [*Id.*]

Mr. Higginbotham, through counsel, now moves to suppress all of the evidence seized pursuant to the May 22, 2016, warrant and Detective Sizemore's accompanying affidavit.  [R. 15.]  Higginbotham contends the warrant lacks probable cause because the affidavit provides no indication of when West, the confidential informant, actually visited the Higginbotham residence and saw methamphetamine there.  [*Id.*]  Pursuant to the Court's local practice, the matter was referred to United States Magistrate Judge Hanly A. Ingram for a recommended disposition.  After review, Judge Ingram recommended granting the motion to suppress based on the affidavit's staleness.  Judge Ingram also concluded the good faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984), did not apply to prevent exclusion of the evidence.  [R. 31.]  The Government objects to Judge Ingram's recommended disposition and seeks *de novo* review before the undersigned.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3).

## II

### A

The Fourth Amendment guarantees that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. CONST. amend. IV.  Search warrants focus on places and things rather than persons, and the Supreme Court has clarified that the "critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought."  *Zurcher v. Stanford Daily*, 436 U.S. 547, 555-56 (1978); *see also United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016).  Therefore, to establish

probable cause for a search, an affidavit accompanying a warrant must demonstrate (1) "the items sought are seizable by virtue of being connected with criminal activity"; and (2) "the items will be found in the place to be searched." *Church*, 823 F.3d at 355 (internal quotation marks and citation omitted).

The first prong of the two-part test is automatically satisfied when the items to be seized are illegal drugs or "contraband." *Id.*; *see also Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967). Accordingly, a police request to search for illegal drugs need only demonstrate "a fair probability that the drugs will be found in a particular place." *Church*, 823 F.3d at 355 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

In order to satisfy this second prong, an officer's affidavit must contain statements of fact "so closely related to the time of the issue of the warrant so as to justify a finding of probable cause of that time." *Sgro v. United States*, 287 U.S. 206, 210 (1932). Without such a temporal connection, the information in an affidavit may become "stale" and thus preclude a finding of probable cause. *See Church*, 823 F.3d at 355 ("Because contraband is often moved from place to place, information about its whereabouts can grow stale over time."); *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006) ("[A] warrant is stale if the probable cause, while sufficient at some point in the past, is now insufficient as to evidence at a specific location."). When an issuing judge determines whether to approve a warrant request based on a particular affidavit, the judge must "make a practical, common-sense decision" about whether the second prong of the test is satisfied and should use a "totality of the circumstances" approach. *Gates*, 462 U.S. at 238; *United States v. Smith*, 510 F.3d 641, 652 (6th Cir. 2007).

When a defendant challenges a search made pursuant to a warrant, the reviewing court may only consider "the four corners of the affidavit" to determine whether probable cause

5

existed. *United States v. Frazier*, 423 F.3d 526, 535 (6th Cir. 2005) (citing *United States v. Hatcher*, 473 F.2d 321, 324 (6th Cir. 1973)). The reviewing court should consider the sufficiency of the affidavit "in a commonsense, rather than hypertechnical manner." *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001). Further, a reviewing court affords "great deference" to an issuing judge's determination, although the issuing judge's discretion is "not boundless." *United States v. May*, 399 F.3d 817, 822 (6th Cir. 2005); *United States v. Czuprynski*, 8 F.3d 1113, 1116 (6th Cir. 1993). "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (quoting *Gates*, 462 U.S. at 236). Nevertheless, the reviewing court must still "conscientiously review the sufficiency of affidavits on which warrants are issued" to determine if the protections set forth in the Fourth Amendment were, indeed, complied with by law enforcement. *Gates*, 462 U.S. at 239.

Finally, "[t]he standard of review for a staleness determination is the same as the standard for determining the sufficiency of an affidavit." *Greene,* 250 F.3d at 480 (citing *United States v. Canan*, 48 F.3d 954, 958-59 (6th Cir. 1995)).

**B**

The warrant used to search Higginbotham's residence presents a close call when it comes to validity. But despite the deference that must be afforded the issuing judge's determination, the Court, like Magistrate Judge Ingram, ultimately concludes the warrant was stale and, thus, invalid. While an affidavit's staleness depends on the specific circumstances of each case, *see Abboud*, 438 F.3d at 572, the Sixth Circuit has identified a number of factors, known as "the *Spikes* factors"*,* to guide the Court's analysis:

> (1) the character of the crime (chance encounter in the night or regenerating conspiracy?)

(2) the criminal (nomadic or entrenched?)

(3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?)

(4) the place to be searched (mere criminal forum of convenience or secure operational base?)

*Id.* (quoting *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998)). Some of these factors do weigh in favor of the Government, but the balance of the factors combined with the circumstances of the case on the whole suggest the affidavit is stale and therefore lacking in probable cause.

The first factor, the character of the crime, goes slightly to the affidavit's staleness. In *United States v. Hython*, the Sixth Circuit explained that the passage of time becomes less significant when the character of a crime is ongoing or continuous. 443 F.3d 480, 485 (6th Cir. 2006) (citing *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988)). According to the *Hython* court, the sale of drugs out of a residence "is not inherently ongoing" but rather "exists upon a continuum ranging from an individual who effectuates the occasional sale . . . to an organized group operating an established and notorious drug den." *Id.* Outdated information is less important when the affidavit establishes the criminal activity in question is closer to the "drug den" end of the continuum. *Id.; see also United States v. Leaster,* 35 F. App'x 402, 409 (6th Cir. 2002) (explaining the "[m]ere possession of drugs alone is not necessarily indicative of on-going drug activity" but noting that "[i]nformation related to drug trafficking does not grow stale as quickly as information regarding mere possession").

In this case, the crime described in the affidavit is drug possession, not necessarily drug trafficking. Although Higginbotham was ultimately charged with possession of methamphetamine with the intent to distribute and conspiracy to distribute methamphetamine

[*see* R. 1; R. 24], the affidavit states only that the informant was at Dustin Higginbotham's residence and that "Dustin Higginbotham had in his possession a rock of Crystal Methamphetamine that weighed 7 to 8 ounces in a Tupperware bowl." [R. 18-1.] Nothing in the affidavit explicitly indicates Higginbotham was actually involved in a trafficking scheme at the time the warrant was issued. For example, the informant does not claim to have purchased any of the methamphetamine from Higginbotham or to have witnessed someone else purchase any drugs from him. There is no reference to a controlled buy. *Compare United States v. Murphy*, 241 F.3d 447 (6th Cir. 2001) (finding an affidavit with five-day-old information was not stale under the totality of the circumstances where the affidavit specifically described a controlled buy rather than mere possession); *see also Leaster*, 35 F. App'x at 409 (analyzing *Murphy*). And there is no suggestion Higginbotham was manufacturing the methamphetamine. *See United States v. Redmond*, 475 F. App'x 603, 608-09 (6th Cir. 2012) (explaining the manufacture of methamphetamine is "closer to a regenerating conspiracy than a chance encounter in the night).

On the other hand, the affidavit does reference Higginbotham's past trafficking charges, and the large quantity of methamphetamine described in the affidavit is consistent with a trafficking operation. [*See* R. 18-1.] While the affidavit on the whole uses language of possession to describe the criminal activity, these references indicate a risk of trafficking. Evidence of possession falls closer on the "occasional sale" end of *Hython*'s drug crime continuum than the "drug den" or ongoing conspiracy end, and the Court finds the Sizemore affidavit leans slightly towards the "occasional sale" end. *See* 443 F.3d at 485. But this factor does not strongly weigh in support of suppression, because some of the affidavit's information does describe trafficking-like activity.

Next, the third *Spikes* factor, the thing to be seized, weighs in favor of staleness. Information about drug crimes "goes stale very quickly because drugs are usually sold and consumed in a prompt fashion." *Redmond*, 475 F. App'x at 608. While seven to eight ounces of methamphetamine is admittedly a large quantity, it is still a "perishable and easily transferable" substance. *Abboud*, 438 F.3d at 572. The Government alleges the affidavit describes the thing to be seized as an item of enduring duration, and it relies on *United States v. Church*, a recent Sixth Circuit opinion that summarizes relevant case law, to do so. But the full text of the underlying cases discussed in *Church* actually tends to support the Defendant's position.

For instance, the Government contends the Sizemore affidavit's language is analogous to the phrase "ready supply," which the *Church* court confirmed could indicate the enduring presence of drugs in a particular locale. *Church,* 823 F.3d at 356 (summarizing *United States v. Williams*, 351 F.2d 475 (6th Cir. 1965)). Indeed, the *Church* court did summarize a prior Sixth Circuit action to explain that "where an affidavit indicates that someone keeps 'a ready supply of heroin' in his apartment, the phrase 'ready supply' shows that heroin is likely there now." *Id.* As noted above, a seven to eight ounce rock of methamphetamine is a relatively large quantity. But the words "ready supply" or another explicit equivalent were not used in this case. And there is no evidence that additional drugs were located at the Higginbotham residence, that Higginbotham frequently stocked contraband at that location, or that the single methamphetamine rock seen by West could not be easily sold to or moved by someone visiting the home.

The Government also relies on *Church* to argue the word "now" in the Sizemore affidavit provides a sufficient temporal reference point. *See id.* (summarizing *United States v. Smith,* 783 F.2d 648 (6th Cir. 1986)). According to the *Church* court, "where an affiant swears that

9

marijuana 'is now' on certain premises, and there is no indication that the information is otherwise stale, the affidavit shows probable cause that the marijuana is where the affidavit says it is." *Id.* (citing *Smith*, 783 F.2d at 652). Detective Sizemore's affidavit does include the phrase "affiant does believe that *there is now* on the premises" [*see* R. 18-1 (emphasis added)], making it seemingly akin to the *Smith* affidavit described by the *Church* court. However, the affidavit described in *Church* from *United States v. Smith* not only indicated that marijuana "is now on the premises" but also stated the premises resident "was producing marijuana at his residence" and that a detective "observed a marijuana plant growing beside the residence." *See Smith*, 783 F.2d at 649. The Court does not read the *Smith* case nor the summary of *Smith* set forth in *Church* to mean the word "now" or the phrase "is now on the premises" automatically prevents a finding of staleness. Additionally, the Court notes the phrase "is now on the premises" in Detective Sizemore's affidavit appears to be stock language rather than a present tense phrase the Detective went out of his way to include. [*See* R. 18-1.] The Court considers the presence of the word "now" as part of its holistic analysis but does not find the word alone to be determinative of the pending motion.

Conversely, the second *Spikes* factor weighs in favor of the Government. The criminal in question, Mr. Higginbotham, was clearly more entrenched than nomadic. *See Abboud*, 438 F.3d at 572. The place to be searched is described as the "residence where Dustin Higginbotham is on House Arrest." [R. 18-1.] A criminal is ordinarily not nomadic where he or she possesses, occupies, or resides in the premises to be searched. *See Leaster*, 35 F. App'x at 409. Higginbotham not only resided at the location described in the affidavit but was also actually confined there on house arrest.

Finally, the fourth factor is at best a wash. The Higginbotham residence identified as the place to be searched is not necessarily a "mere criminal forum of convenience" under Sixth Circuit case law, but neither is it a certain "secure operational base." *Abboud*, 438 F.3d at 572. The passage of time becomes less significant where criminal activity occurs on a secure operational base, *see, e.g.*, *Greene*, 250 F.3d at 481, and the fact that the location in question is the defendant's residence may indicate "some permanence to the defendant's base of operation." *Id.* (quoting *United States v. Yates*, 132 F. Supp. 2d 559, 565 (E.D. Mich. 2001)). However, as previously described, the Sizemore affidavit contains no suggestion that the confidential informant witnessed a drug transaction inside Higginbotham's residence or participated in a controlled buy there. Instead, the affidavit lacks direct evidence that Higginbotham was specifically trafficking drugs out of the location while on home confinement there. [*See* Section II(A), *supra*, at 7-8; R. 18-1.]

The Government emphasizes some circumstantial clues in the affidavit suggesting the Higginbotham residence could be deemed a drug trafficking locale. For example, the size of the methamphetamine rock is consistent with an inference of trafficking; the informant Roy West had assisted law enforcement in three prior methamphetamine trafficking cases; and the affidavit references Higginbotham's "previous Trafficking in Controlled Substances charges." [R. 18-1.] *See also United States v. Dyer*, 580 F.3d 386, 392 (6th Cir. 2009) (noting that while a defendant's criminal history "is not dispositive . . . it is relevant to the probable cause inquiry"). But nothing specifically links Higginbotham's previous "charges"—which, the Court notes, are not necessarily indicative of actual *convictions—*to the confidential informant's testimony. Further, such circumstantial evidence alone does not overcome the other evidence that supports a finding of staleness.

On the whole, the Court finds that the *Spikes* factors weigh, albeit slightly, in favor of a staleness finding in this case. And other circumstances not expressly enumerated in *Spikes* confirm this conclusion. While the affidavit indicates Detective Sizemore independently investigated Dustin Higginbotham's criminal history, informant West's testimony was not supported by any further police investigation. Like in *United States v. Hython*, "the affidavit includes no observation of deliveries to the address, no monitoring of the frequency or volume of visitors to the house, no [ ] controlled buy, no further surveillance whatsoever." 443 F.3d at 486. Importantly, while the affidavit indicates Detective Sizemore received information from Chief Bird sometime on May 21, 2016, the affidavit does not state when Chief Bird received the information from Roy West. [*See* R. 18-1.] The affidavit also does not indicate what day Roy West went to the Higginbotham residence and saw the drugs therein. [*Id.*]

As the Sixth Circuit has instructed, "without a date or even a reference to 'recent activity,' etc., there is no way to begin measuring the continued existence of probable cause." *Hython*, 443 F.3d at 486. In the *Hython* case, where the affidavit "offer[ed] no clue as to when [a] single controlled buy took place," the temporal deficiency was enough to render the warrant stale without considering the affidavit's other weaknesses. *Id.* "Because probable cause has a durational aspect, at least some temporal reference point is necessary to ascertain its existence." *Id.* While the Government goes to great lengths to maintain the Sizemore affidavit contains "at least some" temporal indications, *see id.*, the phrase "is now on the premises" provides the only real temporal reference in the affidavit, and those words alone do not save the affidavit from its flaws. Thus, the Court agrees with Magistrate Judge Ingram's finding that the warrant is stale and, therefore, invalid on its face.

# C

Nevertheless, the invalid warrant is saved by the *Leon* good faith exception. As demonstrated throughout the *Spikes* analysis above, this warrant presents a close call as to validity. And that close call, in this situation, is resolved in favor of law enforcement.

While evidence seized pursuant to a defective warrant is ordinarily barred from admission under the exclusionary rule, evidence that falls within the good-faith exception announced in *United States v. Leon*, 468 U.S. 897 (1984), may still be admitted. In *Leon*, the Supreme Court held that the exclusionary rule should not prevent the Government from introducing evidence "obtained by police officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005). "Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Frazier*, 423 F.3d at 533 (quoting *Leon*, 468 U.S. at 922).

The relevant question in a *Leon* inquiry is "whether the officer reasonably believed that the warrant was properly issued, not whether probable cause existed in fact." *Laughton*, 409 F.3d at 752 (internal emphasis and citation omitted). The *Leon* threshold is generally considered less demanding than the threshold required to prove the existence of probable cause. *United States v. Powell*, 603 F. App'x 475, 477 (6th Cir. 2015), cert. denied, 136 S. Ct. 107 (2015). Further, for purposes of this case, the "determination of good-faith reliance, like a determination of probable cause, must be bound by the four corners of the affidavit." *Hython*, 443 F.3d at 487 (quoting *Laughton*, 409 F.3d at 751).[2]

---

[2] While there is an exception to this rule forbidding consideration of extra-affidavit information when the extraneous information was made known to the issuing magistrate judge, there is no indication that this

13

There are four scenarios where the *Leon* exception does not apply even where a warrant has issued, one of which is where "the affidavit is so lacking in probable cause as to render official belief in its existence entirely unreasonable." *Id.* (internal quotation marks and citation omitted). Mr. Higginbotham argues the third exception applies in the present case, and the Magistrate Judge agreed. [*See* R. 15; R. 31 at 12-16.] However, the Court has carefully reviewed the affidavit as well as relevant case law and determines the *Leon* exception saves the seized evidence from exclusion.

The Magistrate's recommendation relied primarily on the *Hython* case to bar application of the *Leon* exception, and *Hython* is informative in Higginbotham's case. But the Court does not read *Hython* to create a bright-line rule regarding temporal reference points, such that law enforcement could not reasonably rely on the information contained in the Sizemore affidavit.

In *Hython*, the Sixth Circuit considered an affidavit which referenced a controlled buy but provided no date or other temporal reference points as to when the controlled buy occurred. *See* 443 F.3d at 482-87. The court determined the stale affidavit was not saved by the third exception to the *Leon* good-faith rule "because a well-trained officer could not reasonably rely on the affidavit, given that it was based on one undated, acontextual controlled buy." *Id.* at 489. While the court acknowledged that, in some cases, a warrant may be issued on the basis of an inference, the court found there were no facts contained in the affidavit itself to establish an inference about when the controlled buy occurred. *Id.*

In the instant case, the Government argues that the use of the word "now" in the affidavit, the present tense language used throughout the affidavit, the amount of methamphetamine

---

so-called *Frazier* exception is relevant here. *See Hython*, 443 F.3d at 488 (explaining the general rule set forth in *United States v. Laughton* and the subsequent exception established by the *United States v. Frazier* court).

discovered, and the references to Higginbotham's past drug trafficking charges combine to allow an objectively reasonable officer to rely on the warrant. While the Sizemore affidavit could surely be more robust, it includes more temporal indications than the *Hython* affidavit, which truly offered "no clue" as to when the controlled buy occurred. *See id.* at 486. The absence of the date Mr. West saw the drugs at the Higginbotham residence and the date West conveyed that information to authorities is problematic, and affiants would do well to include such information in the future. But a law enforcement officer could still reasonably rely on the Sizemore affidavit even though it failed to articulate those dates, particularly in light of the affiant's assertion that drugs were "now" present at the Higginbotham residence.

The good faith exception ordinarily applies "where the affidavit contains a *minimally sufficient* nexus between the illegal activity and the place to be searched," *see Powell*, 603 F. App'x at 477 (internal quotation marks and citations omitted) (emphasis added), and the Sixth Circuit has also suggested the good faith exception applies where an affidavit provides "*some* connection, regardless of how remote it may have been, between the criminal activity at issue and the place to be searched." *Laughton*, 409 F.3d at 750 (emphasis in original). In light of this case law, the Court cannot conclude that the *Leon* exception is inapplicable. While the temporal clues in the Sizemore affidavit may well be the bare minimum that an officer could reasonably rely on, they are, in this case, enough.

### III

For the foregoing reasons, the Court finds that the warrant used to seize evidence from the Higginbotham residence was stale and unsupported by probable cause. However, the *Leon* good faith exception saves the warrant from its invalidity, and the evidence need not be excluded. Being otherwise sufficiently advised, the Court hereby **ADOPTS** Sections I, II, and

15

III(A) of the Magistrate Judge's Recommended Disposition as and for the opinion of the Court but **OVERRULES** Section III(B) of the Recommended Disposition. [R. 31.] The objections submitted by the United States [R. 32] are **SUSTAINED**, and Defendant Dustin Higginbotham's Motion to Suppress [R. 15] is **DENIED**.

This the 1st day of June, 2017.

Gregory F. Van Tatenhove
United States District Judge